UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WESLEY BYRGE, ) | |
| ) | Case No. 3:23-cv-355 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Jill E. McCook |
| LESLEY PRESSLEY and ) | |
| BRITTANY STREETMAN, ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION

Before the Court is Defendants Lesley Pressley and Brittany Streetman's motion for summary judgment (Doc. 18). For the following reasons, Defendants' motion (*id.*) will be **GRANTED IN PART** and **DENIED IN PART**.

I.  BACKGROUND

Defendants Lesley Pressley and Brittany Streetman are police officers employed by the City of Knoxville. (Doc. 20 at 39, 69.) Plaintiff Wesley Byrge is a resident of Knoxville. (Doc. 1, at 1.) At approximately 9:00 p.m. on August 19, 2023, Pressley attempted to conduct a traffic stop of Plaintiff and his wife for an unilluminated license plate.[1] (*Pressley Bodycam Footage*, 0:30–45.) Pressley activated her squad-car lights, but Plaintiff continued to drive until he pulled into his driveway approximately ten seconds later. (*Id.* at 0:45–55.) Pressley followed Plaintiff onto his driveway, ordered him to "stay in the car," and informed him that "[she was] pulling

---

[1] Plaintiff appears to acknowledge in his complaint that his license plate was unilluminated. (*See* Doc. 1, at 3 (Plaintiff noting that "[he] was unaware that the light was out").)

[him] over." (*Id.* at 0:50–1:05.) Plaintiff approached Pressley and stated "you ain't got no reason to pull me over." (*Id.*) Pressley responded that she was pulling Plaintiff over because his license plate was not properly illuminated and instructed Plaintiff to get back into his car. (*Id.*) Plaintiff did not get in his car and instead began walking away from Pressley towards his house. (*Id.* at 1:05–16.) Pressley told Plaintiff to "get back over here" to which Plaintiff responded, "lady you are on private property." (*Id.*) Pressley ordered Plaintiff to give her his license and threatened to impound his car if he did not comply. (*Id.* at 1:15–35.) Plaintiff stated "I'm not giving you nothing, do you understand that? I don't have to give you my driver's license and I'm not going to . . . I'm not arguing with you, I'm not giving you my license." (*Id.*) Pressley responded, "then I'm going to have your car" to which Plaintiff stated his belief that because his car was on his property it could not be towed. (*Id.* at 1:35–50.) Plaintiff demanded that Pressley leave his property, but she refused. (*Id.*)

At that point, Plaintiff walked away from Pressley and into his house, while Pressley walked back to the end of the driveway. (*Id.* at 2:00–30.) Plaintiff's wife remained outside with Pressley while she waited for backup to arrive. (*Id.* at 2:00–3:00.) After approximately a minute, Plaintiff came back out of the house holding a stack of papers. (*Id.* at 3:30–45.) Pressley asked Plaintiff if he was going to give her his license, but Plaintiff again refused and opened his car door to retrieve something. (*Id.*)

Streetman arrived at the scene, and Defendants approached Plaintiff. (*Id.*) Pressley grabbed Plaintiff, forced his hands behind his back, and pushed him against the car. (*Streetman Bodycam Footage*, 2:15–30.) Plaintiff pulled his hands away, pushed himself away from the car, and flailed his arms, yelling "get off of me! You don't have no right to do none of this! Stop!" (*Id.*) Streetman drew her taser, pointed it at Plaintiff, and threatened to tase him if he did not

stop resisting. (*Id.* at 2:30–3:30.) Plaintiff then put his hands up and stopped struggling. (*Id.*) Pressley ordered Plaintiff to put his hands behind his back, which he did, and Pressley placed him in handcuffs. (*Id.*) Defendants escorted Plaintiff to the squad car while holding his arms behind his back. (*Id.*) Plaintiff continued to state that Defendants did not have the right to stop or arrest him and complained "[they were] breaking [his] arm." (*Id.*) Defendants, along with another officer who had just arrived, placed Plaintiff in the back of the car and closed the door. (*Id.*) Pressley informed Plaintiff that he was being charged with "traffic charges and resisting arrest." (*Pressley Bodycam Footage*, at 35:20–45.) Plaintiff complained that he was injured, so Pressley transported him to UT Medical Center for treatment. (*Id.* at 57:35.)

Plaintiff filed this action on September 29, 2023. (Doc. 1.) Plaintiff asserts the following claims against both Defendants pursuant to 42 U.S.C. § 1983: (1) unlawful trespassing, (2) excessive force, (3) false arrest, and (4) malicious prosecution. (Doc. 1, at 5–9.) Defendants moved for summary judgment. (Doc. 18.) Plaintiff opposes Defendants' motion. (Doc. 25.) Defendants' motion is now ripe for the Court's review.

## II.  STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349

F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To succeed on a claim under § 1983, a plaintiff must show: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law."[2] *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir.

---

[2] Defendants do not dispute they were acting under color of law. (*See generally* Doc. 22.)

4
Case 3:23-cv-00355-TRM-JEM   Document 33   Filed 12/03/24   Page 4 of 19   PageID #: 357

2014) (citations omitted).

The doctrine of qualified immunity, however, shields individual government officials from damages under § 1983 "as long as their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). In deciding whether a defendant is entitled to qualified immunity at the summary-judgment stage, the Court employs a two-part test. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). First, the Court determines whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right. *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2012) (citations omitted). Second, if a constitutional right was violated, the Court determines whether the right was clearly established at the time the violation occurred. *Id.* (citations omitted). The plaintiff bears the burden of "satisfy[ing] both inquires in order to defeat the assertion of qualified immunity." *Sumpter*, 868 F.3d at 480 (citing *Wesley v. Campbell*, 779 F.3d 421, 428–29 (6th Cir. 2015)). "[I]f the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, the court must deny summary judgment." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013)).

A right is clearly established when, "at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted). Courts

should not attempt to define a particular right at a high level of generality. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). Instead, they should assess whether it is clearly established that the particular conduct is unconstitutional. *Id.* ("This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (citations and internal quotation marks omitted)). Still, "[i]t is not necessary[] . . . 'that the very action in question has previously been held unlawful.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) (quoting *Anderson*, 483 U.S. at 640); *see also id.* at 1867 ("[A]n officer might lose qualified immunity even if there is no reported case 'directly on point.'" (citations omitted)). That is, "[t]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts," as long as the defendants had "fair warning" that their conduct violated the plaintiff's rights. *Goodwin v. City of Painsville*, 781 F.3d 314, 325 (6th Cir. 2015) (citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

        *i.*        *Unlawful Trespass*[3]

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Fla. v. Jardines*, 569 U.S. 1, 5 (2013). A person's yard and driveway are "part of the home itself for Fourth Amendment purposes." *Id.* at 6 (citation and internal quotations omitted); *see also Collins v. Virginia*, 584 U.S. 586, 593–94 (2018) (holding that the front driveway is a

---

[3] While Plaintiff titles his claim as one for "unlawful trespass," the complaint makes clear that Plaintiff claims Defendants unlawfully seized him. Specifically, Plaintiff argues that Defendants needed a warrant to come onto his property to arrest him. (*See* Doc. 1, at 4 ("Defendants unlawfully entered upon the Plaintiff's property . . .").) This understanding is bolstered by the fact that Plaintiff cites cases related to the warrant requirement. (*See id.* at 5–6.)

part of the home for Fourth Amendment purposes). As such, the Fourth Amendment "generally requires the obtaining of a judicial warrant before a law enforcement officer can enter a home without permission." *Lange v. California*, 594 U.S. 295, 301 (2021) (citation and internal quotations omitted); *see Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984) ("Searches and seizures inside a home without a warrant are presumptively unreasonable.") (citation and internal quotations omitted).

However, there are exceptions to the warrant requirement, including "exigent circumstances" exceptions. *See Barton v. Martin*, 949 F.3d 938, 948 (6th Cir. 2020). "Exigent circumstances exist when a reasonable officer could believe that there are real, immediate, and serious consequences that would certainly occur were a police officer to postpone action to get a warrant." *Id.* (cleaned up). One of these exigent circumstances is the "hot pursuit" exception. *See Lange*, 594 U.S. at 301. "Under the hot pursuit exception, an officer may chase a suspect into a private home when the criminal has fled from a public place." *Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013). This is based on the idea that sometimes "[t]he emergency nature of [a] situation turns an ordinary pursuit into a hot one, creating the need for immediate police action." *Coffey v. Carroll*, 933 F.3d 577, 586 (6th Cir. 2019) (citations and quotations omitted). However, the hot pursuit exception is "case specific," not "a categorical rule" that allows police to pursue *any* fleeing suspect onto his property. *Lange*, 594 U.S. at 302.

The Supreme Court has expressed special concern when the hot-pursuit exception is applied in the context of suspected misdemeanors. *See id.* at 313. This is because misdemeanors, by definition, are relatively minor offenses, and therefore "police officers do not usually face the kind of emergency that can justify a warrantless home entry." *Id*. at 306. As such, the Supreme Court has "hesitat[ed] in finding" that hot pursuit justified warrantless entry in

cases involving misdemeanors. *Welsh*, 466 U.S. at 750; *see Reed v. Campbell Cnty., Ky.*, 80 F.4th 734, 747 (6th Cir. 2023) ("The Supreme Court has long held that there is a presumption against warrantless entries to investigate minor crimes or to arrest individuals for committing them.") (citations omitted). While hot pursuit can sometimes apply in cases of suspected misdemeanors, "an officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency." *Lange*, 594 U.S. at 313. These circumstances include: "[1] the nature of the crime, [2] the nature of the flight, and [3] [the] surrounding facts." *Id*. at 309. When these factors do not add up to a law enforcement emergency, an officer "must [get a warrant]—even though the misdemeanant fled." *Id.* at 313.

Here, it is undisputed that Defendants entered onto Plaintiff's property without a warrant. Defendants nonetheless argue they are entitled to summary judgment because the hot pursuit exception applies. (Doc. 22, at 11.) However, a reasonable jury could find that there was no emergency justifying a warrantless entry. In fact, this is the *only* conclusion a reasonable jury could reach. Plaintiff was suspected of failing to properly illuminate his license plate, a misdemeanor under Tennessee law. *See* Tenn. Code Ann. § 55-4-110. This is the prototypical trivial offense that does not justify hot pursuit. *See Welsh*, 466 U.S. at 753 ("[I]t is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor."); *Smith*, 716 F.3d at 931 (holding that while "[the officer] had probable cause to believe [the plaintiff] had committed the misdemeanor crime of third-degree retail fraud" this was not an "emergency [that] necessitated immediate police action") (cleaned up). Furthermore, there is no indication that waiting for a warrant would have endangered others or resulted in the destruction of evidence. *See Lange*, 594 U.S. at 313 (noting that "prevent[ing] imminent harms of violence, destruction of evidence, or

escape from the home" can justify a finding of hot pursuit). Plaintiff was not suspected of a crime of violence, and Defendants had no reason to believe he was a danger to himself or others. Similarly, there was no reason to believe that Plaintiff was going to destroy evidence or flee his home.[4] In short, any reasonable officer would have understood there was no law-enforcement emergency. A jury could—and indeed would have to—conclude that Defendants' warrantless entry onto Plaintiff's property was not justified by the hot pursuit exception and, therefore, was unlawful.[5]

Defendants counter that Plaintiff was fleeing police by failing to immediately pull over, which is a Class E felony under Tennessee law. (*See* Doc. 22, at 10.) Defendants suggest that Plaintiff was therefore engaged in serious criminal activity justifying hot pursuit. (*See id*.) There are two problems with Defendants' argument. First, Pressley's bodycam footage shows that Plaintiff continued driving for only ten seconds after she signaled for him to pull over. (*See Pressley Bodycam Footage*, at 0:45–55.) A reasonable jury could conclude that Plaintiff was not attempting to "intentionally flee or attempt to elude [] law enforcement" by driving a short distance to his home. Tenn. Code Ann. § 39-16-602(b)(1). Second, Plaintiff's conduct is substantially the same no matter how it is framed. The question for the purposes of the hot-

---

[4] The only way Plaintiff could have "destroyed" the evidence in this case would have been to leave his house and fix his car's license plate light in full view of the street.

[5] *Lange* involved a very similar pursuit arising from an attempted traffic stop. *Lange*, the petitioner, drove past a police officer while listening to loud music and honking his horn. 594 U.S. at 299. The officer turned on his flashing lights and signaled for him to pull over. *Id*. Lange, at that point only a four-second drive from his home, pulled into his garage. *Id*. The officer followed Lange in, questioned him, and, after administering a breathalyzer, arrested him for the misdemeanor offense of driving under the influence. *Id*. The Supreme Court rejected that the police had a categorical right to follow Lange onto his property, the same argument Defendants promote here. *See id.* ("The question presented here is whether the pursuit of a fleeing misdemeanor suspect always . . . qualifies as an exigent circumstance. We hold it does not.").

pursuit analysis is always: is there a law-enforcement emergency? The fact that Plaintiff continued to drive after being signaled to stop—while perhaps a separate crime under Tennessee law—does not somehow convert the situation into a law-enforcement emergency.[6] *See Hess v. Vill. of Bethel, Ohio*, No. 1:22-CV-56, 2024 WL 3327761, at *9 (S.D. Ohio July 8, 2024) (rejecting hot pursuit exception when "any exigency created by [the] later offense seems intertwined with—and necessarily stems from—the need to address the underlying [offense]—which in this case was minor."); *Lange*, 594 U.S. at 308 (giving the example of a teenager driving without taillights fleeing to his parent's house as the prototypical "non-emergency situation" in which hot pursuit was not justified) (citation and internal quotations omitted).

The next question is whether Defendants are entitled to qualified immunity. The Sixth Circuit has "repeatedly held that it [is] clearly established that warrantless entry into a home without an exception to the warrant requirement violates clearly established law." *Reed*, 80 F.4th at 745 (cleaned up). Therefore, "if the jury finds that there was no exigent circumstance, then . . . [a defendant's] warrantless entry into [a plaintiff's] home violate[s] clearly established law." *Williams v. Maurer*, 9 F.4th 416, 438 (6th Cir. 2021). Because Defendants did not have a warrant and a jury could find that no exception applies, Defendants are not entitled to summary judgment.

---

[6] Defendants appear to argue that hot pursuit is *always* justified when a person suspected of a misdemeanor flees because, under Tennessee law, he is automatically committing a felony. This argument flies in the face of *Lange*, which rejected a "categorical rule" that police were always justified in pursuing a fleeing misdemeanant. 594 U.S. at 307. The Court rejects Defendants' suggestion that a state can sidestep the warrant requirement with a statute that makes flight from law enforcement a felony. *Lange* instructs courts to look at the circumstances of "the flight itself," not how a state chooses to classify the flight. *Id.* at 307–08.

### ii. Excessive Force

The Fourth Amendment gives individuals the "right to be free of excessive force when police make an arrest or seizure." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). The Supreme Court set forth the "objective reasonableness" standard for determining the viability of a Fourth Amendment excessive-force claim in *Graham v. Connor*. 490 U.S. 386, 396–97 (1989); *see also Stanfield v. City of Lima*, 727 F. App'x 841, 845 (6th Cir. 2018) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") (alteration in original) (quoting *Graham,* 490 U.S. at 395); *Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011). The *Graham* test requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests." *Graham*, 490 U.S. at 396. In doing so, a court must evaluate the official's actions from "the perspective of a reasonable officer on the scene" at the time of the alleged conduct; after-the-fact speculation as to what the official *should* have done is prohibited. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

*Graham* requires the court to examine "the facts and circumstances of each particular case" by balancing factors including "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). In a case involving an officer using force multiple times—for instance, an officer throwing multiple punches—each use of force is a potential constitutional violation that must be analyzed. *See Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 306 (6th Cir. 2017)

("Because each tasing or punch can be a separate constitutional violation, we analyze them in turn."). It is, therefore, possible for the first use of force to be justified, but the subsequent use of force—even the same type of force—to be excessive.

Applying the *Graham* factors, and viewing the video in the light most favorable to Plaintiff, a reasonable jury could find that Defendant Pressley's initial use of force in grabbing and pushing Plaintiff against his car was excessive.[7]

First, the severity of the crime at issue the crime at issue was trifling, as Defendants acknowledge. (*See* Doc. 22, at 12.) Plaintiff was stopped for failing to illuminate his license plate, and the Sixth Circuit has noted that traffic infractions are "exceedingly minor" for the purposes of *Graham*. *Sevenski v. Artfitch*, No. 21-1391, 2022 WL 2826818, at *4 (6th Cir. July 20, 2022); *see King v. City of Rockford, Michigan*, 97 F.4th 379, 394 (6th Cir. 2024) ("King's suspected traffic violations fall within the lowest rung of unlawful activity which counsels against the use of force exerted.") (cleaned up). This factor therefore weighs heavily in favor of a finding that using any force would be excessive. Furthermore, while Defendants again attempt to reframe Plaintiff's actions as evading arrest, this does not fundamentally change the fact that his conduct was not serious.

Second, a jury could also find that Plaintiff did not pose a threat to Defendants or to others. As noted above, the suspected offense was non-violent. Furthermore, the bodycam footage, viewed in the light most favorable to Plaintiff, shows a man who was trying to retreat

---

[7] Though this force was undoubtedly minor, the Sixth Circuit has been clear that when force is gratuitous, even using a small amount of force can be excessive. *See Stricker v. Twp. of Cambridge*, 710 F.3d 350, 364 (6th Cir. 2013) ("[I]n determining whether there has been a violation of the Fourth Amendment, we consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence.") (citation and internal quotations omitted); *Reed*, 80 F.4th at 750 (6th Cir. 2023) ("[W]e have never imposed a de minimis injury requirement for Fourth Amendment excessive-force claims").

from confrontation, not harm others. Plaintiff repeatedly tried to get Pressley to leave and tried to retreat into his home. While he was undoubtedly argumentative, non-compliant, and agitated, precedent is clear this sort of behavior does not necessarily justify a finding that Plaintiff posed a safety risk.[8] *See King*, 97 F.4th at 394 ("[A]lthough [the plaintiff] may have been loud and argumentative, a reasonable jury could otherwise find him 'non-threatening'"); *Shumate v. City of Adrian, Michigan*, 44 F.4th 427, 444 (6th Cir. 2022) ("[The plaintiff's] behavior was rude, annoying, untoward, and uncooperative. However, mere agitated hand gestures and profanity, unaccompanied by threats, fall short of the prototypical behavior that would make an officer fear for his physical safety."). A reasonable jury could find that Plaintiff did not present a danger to Defendants or the public at large. The first two *Graham* factors therefore strongly support a finding that Pressley's initial contact was gratuitous and, therefore, excessive.[9]

The third factor, whether Plaintiff was actively resisting arrest, is a far closer issue. Viewing the bodycam footage in the light most favorable to Plaintiff, a jury could conclude he was only passively resisting. *See King*, 97 F.4th at 396 ("Mere passive resistance . . . entails a

---

[8] That is not to say that a jury could not find that Plaintiff was behaving threateningly. Viewed in a less favorable light, the bodycam footage shows Plaintiff behaving erratically, becoming increasingly agitated, and aggressively approaching Defendants. Furthermore, Plaintiff was far larger than both Defendants. A jury could conclude that a reasonable officer in Defendants' positions would find Plaintiff threatening.

[9] Defendants argue that Plaintiff was dangerous because he may have gone into his home or car to retrieve a weapon. However, this is not enough to support a finding of dangerousness in the absence of objective evidence indicating that a person may have had a weapon in his home or car. *See Hess*, 2024 WL 3327761, at *8 ("The Fourth Amendment does not allow the police merely to presume, with no other basis, that an individual might be retrieving a weapon and therefore might pose a danger to the officer simply because that individual tried to retreat into her home."); *Shumate*, 44 F.4th at 444 (rejecting a defendant's argument that "a reasonable officer would find objectively threatening [a plaintiff's] movement towards the truck for fear he intended to retrieve a weapon," noting that "there was nothing—no evasive movements towards a waistband, no threats of violence, no charging towards the officer—suggesting possession or intent to possess a weapon.").

lack of physical resistance or verbal antagonism."). The bodycam footage shows that Plaintiff refused to follow Pressley's commands, told her she had no right to be on his property, asked her to leave, ignored her, and retreated into his house. (*See Pressley Bodycam Footage*, 0:45–1:50.) A jury could conclude that, because Plaintiff was not actively resisting, Pressley was not justified in grabbing Plaintiff and pushing him against his car.

However, Plaintiff's actions clearly escalated into active resistance when he physically struggled with Defendants and flailed his arms towards them. *See Browning v. Edmonson Cnty.*, 18 F.4th 516, 527 (6th Cir. 2021) ("[A]ctive resistance generally means: physical struggles with police . . . [and] refusal or resistance to being handcuffed") (internal quotations and citations omitted); *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (noting that active resistance includes "physically struggling with, threatening, or disobeying officers") (citing *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012)). At this point, Defendants were justified in using greater force than they did to subdue Plaintiff. *See Rudlaff*, 791 F.3d at 641 ("When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him"). All instances of force used by Defendants after this point—pointing a taser at him, placing him in handcuffs, and escorting him to the squad car—were not excessive. (*See Pressley Bodycam Footage*, at 3:45–4:50; *Streetman Bodycam Footage*, at 2:15–3:15.) Because Streetman only used this force after Plaintiff began actively resisting, she is entitled to summary judgment.

However, while a jury could conclude that Pressley grabbing and pushing Plaintiff was excessive, Pressley is still entitled to qualified immunity. Plaintiff's actions, even when viewed in the light most favorable to him, muddle the line between active and passive resistance. *See Jackson*, 678 F. App'x at 306 (noting that "verbal hostility coupled with failure to comply with police orders" can constitute active resistance). As noted above, whether or not Plaintiff was

14
Case 3:23-cv-00355-TRM-JEM   Document 33   Filed 12/03/24   Page 14 of 19
PageID #: 367

actively resisting during his initial encounter with Pressley is a close question. The bodycam footage shows that Plaintiff repeatedly refused Pressley's commands and yelled at her to get off his property. (*See Pressley Bodycam Footage*, 0:45–1:50.) In the face of this conduct, the Court cannot say that a reasonable officer in Pressley's position would have known that she was not justified in attempting to use minimal force to restrain Plaintiff. The Sixth Circuit has noted that when "[a defendant's] conduct runs close to the line distinguishing passive resistance from active" and "does not fit cleanly within [] existing excessive force case law," then qualified immunity applies. *King*, 97 F.4th at 397. That is precisely the situation before the Court.

Because Plaintiff was actively resisting arrest, Streetman was justified in using force to subdue him and is, therefore, entitled to summary judgment. Furthermore, while Pressley's use of force was likely excessive, qualified immunity applies and she is entitled to summary judgment.

### iii. False Arrest [10]

To prevail on a claim for false arrest under § 1983 for violation of Fourth Amendment rights, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff. *See Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). An officer may arrest a person "even for a misdemeanor, no matter how minor, so long as he has probable cause to believe that an offense has been committed." *Holloran v. Duncan*, 92 F. Supp. 3d 774, 792 (W.D. Tenn. 2015) (quoting *Straub v. Kilgore*, 100 F. App'x. 379, 383 (6th Cir.2004)).

The Sixth Circuit defines probable cause as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Sykes v. Anderson*, 625 F.3d 294, 306

---

[10] In his complaint Plaintiff alleges "Malicious Prosecution/False Arrest." (Doc. 1, at 8.) While Plaintiff cites case law only related to a Fourth Amendment malicious prosecution claim, the Court will nonetheless analyze his claims as a false arrest claim as well. (*See id.* at 8–9.)

(6th Cir. 2010) (citation and internal quotations omitted). Probably cause to arrest is present when "at the time of the arrest, the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008). To determine whether an officer had probable cause to make an arrest, the "reviewing court must assess the existence of probable cause from the perspective of a reasonable officer on the scene" at the time the incident occurred and may not use "the 20/20 vision of hindsight." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citation and internal quotations omitted).

Defendants argue that they are entitled to summary judgment because they had probable cause to arrest Plaintiff for failing to illuminate his license plate. (Doc. 22, at 13.) Tennessee Code Annotated § 55-4-110 provides that license plates must "be illuminated at all times that headlights are illuminated." Failure to properly illuminate a license plate is a Class C misdemeanor. *Id.* Here, because of the angle of Pressley's bodycam, the footage does not show whether Plaintiff's license plate was illuminated while he was driving. (*See Pressley Bodycam Footage*, at 0:50–55.) However, Pressley avers that while "following [Plaintiff's] vehicle on a public roadway [she] noted that his license plate was not illuminated in violation of Tennessee law." (Doc. 20, at 40.) This statement is supported by the fact that Pressley, immediately after pulling Plaintiff over, told Plaintiff she was stopping him because his license plate was not illuminated. (*Pressley Bodycam Footage*, at 0:55–1:05.) Most importantly, there is no evidence in the record which contradicts Pressley's sworn statement.[11]

---

[11] Indeed, Plaintiff does not dispute that his license plate was not properly illuminated. (*See generally* Docs. 1, 25.)

Because the only evidence in the record shows that there was probable cause to arrest Plaintiff, Defendants are entitled to summary judgment on Plaintiff's false arrest claim.

### iii. Malicious prosecution

"The Sixth Circuit recognizes a separate constitutional claim of malicious prosecution under the Fourth Amendment, which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Dixon v. Ginley*, No. 1:13-cv-489, 2013 WL 2425132, at *7 (N.D. Ohio June 3, 2013) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). To prevail on a claim for malicious prosecution under § 1983 for violation of Fourth Amendment rights, a plaintiff must establish that:

> (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute";
>
> (2) "there was a lack of probable cause for the criminal prosecution";
>
> (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure"; and
>
> (4) "the criminal proceeding [was] resolved in the plaintiff's favor."

*Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)) (internal quotation marks and alterations omitted).

The Court faces several problems in analyzing Defendants' arguments that they are entitled to summary judgment on this claim because Defendants cite the incorrect cause of action in their motion for summary judgment. There are two possible malicious prosecution claims: the common-law-tort claim and the Fourth Amendment § 1983 claim. *King v. Harwood*, 852 F.3d 568, at 580 (6th Cir. 2017). These are distinct claims with distinct elements. Plaintiff is bringing a Fourth Amendment malicious prosecution claim pursuant to 42 U.S.C. § 1983. (*See* Doc. 1, at 1, 8.) The Sixth Circuit has clearly laid the elements for such a claim, but Defendants inexplicably cite the elements for the generic common law tort of malicious prosecution. (*See*

Doc. 22, at 13–14.)  Defendants do not cite Tennessee law for the elements of malicious prosecution, instead referencing a Supreme Court case discussing the "American tort-law consensus" on malicious prosecution claims.  (*See id.* (citing *Thompson v. Clark*, 596 U.S. 36, 44 (2022)).  As a result, Defendants mistakenly argue that Plaintiff must show that the prosecution was instituted "with malice" despite Sixth Circuit precedent making clear there is no such requirement for a § 1983 malicious prosecution claim.  *See Harwood*, 852 F.3d at 580 ("[I]n our circuit [] a Fourth Amendment violation under § 1983 does not require a showing of malice at all").

The only potentially valid argument Defendants raise is that there was probable cause to charge Plaintiff with resisting arrest.[12]  Tennessee Code Annotated 39-16-602 provides in relevant part:

> It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting a stop, frisk, halt, arrest or search of any person by using force against the law enforcement officer . . . [I]t is no defense to prosecution under this section that the stop, frisk, halt, arrest or search was unlawful.

Physically struggling with police constitutes resisting arrest.  *See State v. Tidwell*, No. 01C01-9807-CC-00288, 1999 WL 436840, at *3 (Tenn. Crim. App. June 30, 1999) (upholding resisting arrest conviction when a defendant "flailed his arms and struggled with the officers."); *State v. Lee*, No. 03C01-9410-CR-0039, 1995 WL 395840, at *5 (Tenn. Crim. App. July 6, 1995) (upholding resisting arrest conviction when a defendant "caus[ed] the officer to 'wrestle' him before handcuffing him."); *State v. Hart*, No. W2023-01103-CCA-R3-CD, 2024 WL 3273637, at

---

[12] The Court has already concluded that there was probable cause to believe that Plaintiff failed to illuminate his license plate.  *See supra*, at 16–17.

*8 (Tenn. Crim. App. July 2, 2024) (upholding resisting arrest conviction when a defendant "pulled away and struggled with [officers]").

Here, Pressley was attempting to arrest Plaintiff for a failure to illuminate his license plate. The bodycam footage clearly shows that Plaintiff physically struggled with Defendants when he wrestled himself away from Pressley and flailed his arms at them. (*Streetman Bodycam Footage*, 2:15–30.) This struggle established probable cause to charge Plaintiff with resisting arrest. *See*, *e.g*, *Lee*, 1995 WL 395840, at *5. Furthermore, even though the Court has found that Defendants were unlawfully on Plaintiff's property, the fact that an arrest is unlawful is not a defense to resisting arrest. *See* Tenn. Code Ann. 39-16-602 ("[I]t is no defense to prosecution under this section that the stop, frisk, halt, arrest or search was unlawful"); *State v. Forkpa*, No. E201901605CCAR3CD, 2020 WL 6707659, at *8 (Tenn. Crim. App. Nov. 16, 2020) ("[T]he legality of the arrest is irrelevant in determining whether a conviction for resisting arrest is proper.").

Because there was probable cause to charge Plaintiff with resisting arrest, Defendants are entitled to summary judgment.

## V. CONCLUSION

For the above reasons, Defendants' motion for summary judgment (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's excessive force, false arrest, and malicious prosecution claims are **DISMISSED WITH PREJUDICE**. Plaintiff's only remaining claim is "unlawful trespassing."

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**